

**SIGNED this 27th day of August, 2010.**

_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court
Western District of Texas
San Antonio Division

| In re | Bankr. Case No. |
|---|---|
| Duane Hammons & Melonie B. Hammons | 10-50025-C |
| *Debtors* | Chapter 13 |

## Memorandum Decision on Motion to Reject Executory Contract Concerning Residential Real Property

Came on for hearing the foregoing matter. The debtors sought to reject a contract for the sale of a house to Nathan Land and Saralyn Petty (the Buyers). The Buyers filed a response. After trial, the court ruled that the contract could be rejected, and that the Buyers did not have the right to remain in possession.

**Facts**

This case involves a house located at 7426 Sunscape Way, in San Antonio, Texas. The debtors own the house, but do not live there. They decided to sell the house to the Buyers, signing a "Standard Purchase and Sale Agreement" on September 30, 2009. The contract was "seller financed" and "wrapped" an existing mortgage on the

house in favor of DLJ Mortgage Capital, Inc.[1] The debtors were behind on the mortgage, and needed income from the property in order to try to pay that mortgage. The debtors were also seeking a loan modification of the mortgage while this was going on.

The parties went to a scheduled closing on November 13, 2009, and signed all the paperwork necessary to close. However, the Buyers tried to pay closing costs with a personal check, causing the closer to delay closing until a cashier's check could be obtained. In the interim, the closing officer (a local attorney) discovered for the first time that the underlying mortgage was in arrears for eight months. The closing officer decided not to close the transaction until this new wrinkle could be cleared up. She also notified the Buyers of the situation. They were understandably upset.

The Buyers had paid the first payment due under the terms of the purchase contract, but declined to pay December's payment until the issue of the underlying mortgage arrears could be cleared up. There was also the issue of paying a one-time payment of $8,000, to be funded by a tax credit for which the Buyers qualified under a federal program for first time home-buyers. The Buyer needed documentation that the transaction had closed in order to qualify for payment, but the debtors did not want to give the debtor that paperwork because the debtors were having second thoughts on whether they even wanted the sale transaction to close.

In the meantime, efforts to modify the underlying mortgage loan fell through, and the debtors filed this chapter 13 bankruptcy petition.

---

[1] Wraparound mortgages are common in Texas. Often the original mortgage holder is not aware that the property has been sold on a "wrap note." For that matter, the buyer might not be fully aware of the status of the underlying mortgage either. That was the case here.

In the motion to reject the sales contract, the debtors contend that the Buyers have defaulted on the contract by not making the monthly payments and my failing to tender the $8,000 cash payment. The Buyers counter that they have made substantial improvements to the property, for which they are entitled to a credit or offset against the payment obligations. They also say that they were not told about the underlying problem with the mortgage, and that that should excuse them from having to make payments. They insist that they want to go through with buying the house, but should also receive credits for their various damages. The debtors respond to these allegations, denying that they ever agreed to the improvements made by the Buyers, adding that they gave the Buyers the necessary paperwork to qualify for the tax credit,[2] and maintaining that they have a right to reject the contract under section 365(i) of the Bankruptcy Code. They need regular income from the property and intend to rent it out as soon as they evict the Buyers, and to look for a new buyer as well.

**Analysis**

Section 365(*i*) permits a trustee to reject a contract for the sale of real property. Section 365(*i*) and 365(*j*) then provide special remedies for the non-debtor party to the contract (*i.e.*, the buyer), depending on whether the non-debtor party is "in possession" of the real property. If the non-debtor party is not in possession, then the non-debtor party is only entitled to ordinary rejection damages (subsection (i)), and also to a lien on the interest of the debtor in the property for the recovery of any portion of the purchase price that the non-debtor has already paid (subsection (j)).

---

[2] The Buyers in fact applied for and received the tax credit, using the paperwork they were furnished by the debtors.

If the non-debtor party is "in possession" then the non-debtor has a choice of remedies. He can choose to treat the contract as terminated (and thereby surrender any continued right to possession) but can file a claim for rejection damages, as with any other rejected executory contract. *See* 11 U.S.C. § 365(i)(1). Or the non-debtor can choose to remain in possession of the real property, in which case the following rules will apply:

**1.** the purchaser must continue to make all payments due under the contract;

**2.** the purchaser may offset against those payments any damages occurring *after* the date of rejection, if such damages are caused by the nonperformance of any obligation on the part of the debtor after the date of rejection;

**3.** the purchaser may *not* offset any other damage claims he might have against those payments;

**4.** the purchaser waives the right to assert a rejection claim against the estate (other than the offsets allowed above);

**5.** the trustee, meanwhile, is obligated to deliver title to the purchaser in accordance with the terms of the contract;

**6.** the trustee is relieved of all other obligations to perform under the contract.

*See* 11 U.S.C. § 365(i)(2).

At the outset, we must first ask whether the debtors may invoke this remedy. The debtors filed their case under chapter 13. Under that chapter, debtors can exercise some, but not all, of the rights of a trustee under other sections of the Code. Section 1303 expressly permits chapter 13 debtors to employ the rights and powers of a trustee under section 363(b), (d), (e), (f), and (l). 11 U.S.C. § 1303. The section does not

4

mention other sections, however, and some courts have concluded that therefore debtors in chapter 13 cannot, for example, exercise chapter 5 avoidance powers. *See In re Stangel*, 219 F.3d 498, 501 (5th Cir. 2000). Absent express authorization, it would appear that the debtors in a chapter 13 case also lack the ability to employ section 365. That conclusion is wrong, however, as section 1322(b)(7) permits a debtor's chapter 13 *plan* to provide for the assumption, rejection, or assignment of any executory contract or lease of the debtor not previously rejected under section 365, subject to the provisions of section 365 itself. 11 U.S.C. § 1322(b)(7); *see also In re Allen*, 362 B.R. 866, 870 (Bankr. N.D.Ohio. 2007).

    A number of courts have concluded that the power to assume or reject an executory contract in a plan, as authorized by section 1322(b)(7), means that the debtor does not exercise that power by motion. *See In re Hall,* 202 B.R. 929, 932-33 (Bankr. W.D. Tenn. 1996)*; In re Flugel,* 197 Bankr. 92, 94-95 (Bankr. W.D. Tenn. 1996)*; In re Aneiro,* 72 Bankr. 424, 428 n.3 (Bankr. S.D. Cal. 1987)*.* While section 365 is applicable in chapter 13 cases, by virtue of section 103(a), its provisions can be employed by the debtor only by way of the plan process, thanks to the absence of any reference to section 365 in section 1303, and the presence of a specific authorization to assume or reject by way of a plan, found in section 1322(b)(7). Rule 6006 adds further support for this reading, which states that Rule 9014 (which governs motion practice) applies to the assumption or rejection of leases and executory contracts, unless this action is being taken as part of a plan. *See* FED.R.BANKR.P. 6006(a). By the same token, however, a motion filed *incident to* confirmation to assume or reject an executory contract does no great violence to the overall statutory scheme, provided any relief granted is subject to

the debtor's actually obtaining confirmation of the plan. In fact, a motion filed incident to confirmation makes the confirmation process itself more efficient and predictable.[3]

The debtors specifically noted that the outcome of this court's decision on this executory contract was essential to how the plan would be fashioned. The court views that as sufficient to satisfy the "incident to confirmation" standard here relied on, and concludes that the motion can be entertained as one pursuant to the authority set out in section 1322(b)(7). *See Flugel*, *supra* at 95 & n. 3; *see also* Keith Lundin, Chapter 13 Bankruptcy, 2d ed. § 4.87 (1994).

The debtors have the right to reject this contract if it is in their economic best interests. They believe they can sell the property for more than they had agreed to sell it to the Buyers here, and now that they have filed this chapter 13 case, they have the means with which to deal with the mortgage lender. They are current post-petition, and the arrears are to be placed in the plan. All they need now is a new reliable buyer or a new renter. As the decision to assume or reject an executory contract is one normally entrusted to the business judgment of the estate representative, and that discretion is not normally disturbed, the court has no reason not to permit the debtors to elect to reject this contract. *See generally In re Topco*, 894 F.2d 727, 741 (5th Cir. 1990).

The Buyers of course want to remain in possession. The evidence established that the Buyers have not made any payments to the debtors since November 2009. Thus the regular monthly payments contemplated under the contract are now due, but

---

[3] Such motions are common in the chapter 11 context. For example, it is common for parties to move for substantive consolidation prior to actual confirmation, even though technically substantive consolidation can only occur under section 1123 via the plan process itself. *See In re Stone & Webster, Inc.*, 286 B.R. 532, 534 (Bankr. D.Del. 2002). Similarly, settlements have been accomplished incident to confirmation by way of a motion filed in advance of confirmation. *See In re Iridium Operating LLC.*, 478 F.3d 452 (2nd Cir. 2007).

6

have not been paid. Furthermore, the one-time $8,000 payment has not been made. On these facts, the Buyers cannot employ the remedy of remaining in possession of the property. *See In re Nickels Midway Pier, LLC*, 255 Fed. Appx. 633, 2007 U.S. App. LEXIS 27380 (3rd Cir. 2007). In *Nickels Midway Pier*, the non-debtor party was Wild Waves. The facts there indicated that, while Wild Waves was in possession, it could not qualify for relief under section 365(i)(1) "because it has not made payments toward the purchase of the Pier [and so] is not in a position to 'continue to make all payments due' within the meaning of § 365(i)(2)(A)." *Id.*, at *11 (quoting the statute). The statute's use of the phraseology "shall continue to make all payments due under the contract" implies that the special relief of remaining in possession is only available to non-debtor parties who are current on their payment obligations and thus need only to "continue to make" those payments. *See* 11 U.S.C. § 365(i)(2)(A). If the non-debtor party is not current, then the special relief granted here should not be made available to the non-debtor party.[4]

The Buyers maintain that their nonpayment should not count against them, as the debtors placed the contract in jeopardy by not paying the underlying mortgage. True though that observation may be as an economic fact, it carries little legal weight. The Buyers, had they so chosen, could have paid their money into an escrow account. Or they could have simply instructed their lawyer to hold the monthly payments in his trust

---

[4] We need not be detained for long by the observation that debtors and trustees are afforded the opportunity to cure pre-existing defaults and to make provision for adequate assurance for future performance. These are special remedies granted by the Code itself to entities that have filed for bankruptcy relief and so have subjected their entire financial selves to court supervision and creditor intrusion. Non-debtor parties to contracts for the sale of real property, by contrast, are not "debtors in bankruptcy" subject to the court's supervision. To the contrary, they are obtaining under this provision a special benefit that otherwise undercuts principles like equality of distribution and equal treatment for similarly situated creditors. The exception is properly narrowly construed and should not be read to imply greater special protections than it already provides.

7

account pending resolution of the dispute. The Buyers did not do that, and admitted in testimony that they were unable to bring the back payments current (assuming the court would otherwise permit this sort of cure).

Nor can the Buyers maintain that they are entitled to an offset for the repairs and improvements they have made to the property in the interim. Without regard to whether those repairs and improvements might support a claim against the estate as part of the Buyers' rejection damages (a question the court leaves for another day),[5] the statute is clear that the only offsets permitted against payments due are those arising from "any damages occurring *after* the date of the rejection of such contract [and] caused by the nonperformance of any obligation of the debtor *after such date.*" 11 U.S.C. § 365(i)(2)(A). That excludes any damages arising prior to rejection, and certainly excludes these types of damages even if they could be said to "occur after" the date of rejection, because they were not caused by "the nonperformance of any obligation of the debtor" with respect to the contract being rejected.

For these reasons, the remedy under section 365(i)(2)(A) is not available to the Buyers in this case. They may, of course, file a claim for rejection damages, but they may not continue to claim a right to remain in possession of the premises by virtue of this provision of the Bankruptcy Code.

The court has directed the parties to submit forms of order consistent with the court's ruling as announced from the bench and as memorialized here.

*# # #*

---

[5] Rule 3002(c) sets a hard deadline of 90 days after the first meeting of creditors for the filing of claims in chapter 13 cases. *See* FED.R.BANKR.P. 3002(c); *see also* FED.R.BANKR.P. 9006(b). However, Rule 3002(c) also has exceptions. One is for claims arising from the rejection of an executory contract. *See* FED.R.BANKR.P. 3002(c)(4).